IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILNICK MONPREMIER,

    Petitioner,

v.  CASE NO. 4:05-cv-384-MP-AK

ALBERTO GONZALES, et al.,

    Respondents.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 1, Petition for Writ of Habeas Corpus, filed by Wilnick Monpremier. Petitioner is proceeding *pro se* and IFP. The Government was ordered to respond, and it filed a motion to dismiss. Doc. 18. Because the Government attached, and the Court will consider, numerous documents outside the pleadings, the Court converted the motion to a motion for summary judgment, *see* Fed. R. Civ. P. 12(b), and provided Petitioner with the requisite notice. Doc. 19. Petitioner did not file a reply or otherwise contact the Court, and thus, this case is in a posture for decision. Having carefully considered the matter, the Court recommends that the motion for summary judgment be granted, and the petition for writ of habeas corpus be denied.

## **BACKGROUND**

The Petitioner, Wilnick Monpremier, was born in Haiti on April 27, 1986.  Doc. 1 at 3.  Petitioner left Haiti "in a boat in April 1994," arriving in Miami, Florida, that same month.  *Id*. at 4.  Official records indicate that Petitioner entered the United States "at an unknown location, on an unknown date, by unknown manner without being inspected by an Immigration officer" and that once in the United States, he "did not adjust his status to that of a Lawful Permanent Resident."  Doc. 18, Ex. A.

On March 5, 2004, Petitioner was convicted in the Circuit Court for Broward County, Florida, of possession of cocaine and sentenced to four years probation.  *Id*. at Ex. B.  Petitioner subsequently violated his probation and was sentenced to serve 15.9 months in state custody.  *Id*.  Petitioner came to the attention of the Immigration and Naturalization Service on or about November 12, 2004, and it commenced removal proceedings against him based on this drug conviction and on the fact that he was "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  *Id*. at Ex. C.  This Notice to Appear was served on Petitioner on November 30, 2004.  On March 7, 2005, Petitioner appeared before the Immigration Court in Miami, Florida, which ordered him removed to Haiti.  *Id*. at Ex. D & E.  In its findings, the Court noted that Petitioner had "expressed no fear of return to Haiti, stating that he does not know much about that country other than it is bad."  *Id*. at E.

On March 29, 2005, Petitioner was transferred from the custody of the Florida Department of Corrections to the custody of Immigration and Customs Enforcement.  *See* http://www.dc.state.fl.us/InmateReleases/.  He has been detained in ICE custody at Wakulla

County Jail since then. Doc. 1 at 1. On that same date, Petitioner appealed the removal decision, Doc. 18, Ex. F, and shortly thereafter, he completed an affidavit of identity regarding his Haitian citizenship. *Id*. at Ex. G.

On July 8, 2005, the Board of Immigration Appeals dismissed Petitioner's appeal, finding:

> We adopt and affirm the decision of the Immigration Judge. We further find no evidence that [Petitioner] was denied due process in these proceedings. [Petitioner] was advised of his right to an attorney, and indicated at the hearing that he hired one, but the person hired did not appear. [Petitioner] did not provide any information regarding the identity of the individual purportedly hired, and did not comply with any of the procedural requirements for a claim of ineffective assistance of counsel. We therefore cannot conclude that the respondent was denied his right to counsel in these proceedings.
>
> In addition, [Petitioner] was asked at the hearing if he had any fear of return to Haiti. He merely indicated that the didn't like the conditions there, and didn't know anybody in Haiti. Inasmuch as the respondent failed to provide any specificity either at the hearing or on appeal for the basis of his fear of persecution or torture, we see no reason to remand the record for a new hearing.

*Id*. at Ex. H (citations omitted).

On August 2, 2005, ICE issued to Petitioner a Notice to Alien of File Custody Review. *Id*. at Doc. I. This Notice advised Petitioner that he was "required to cooperate with ICE in effecting [his] removal from the United States." *Id*. It also advised him that if he was not removed within 90 days, then the Deciding Official "will review your case for consideration of release on an Order of Supervision." *Id*. Petitioner was cautioned that his release was dependent on his "demonstrating to the satisfaction of the Attorney General that you will not pose a danger to the community and will not present a flight risk." *Id*. The Notice set September 19, 2005, as the date for review of Petitioner's custody status. *Id*. At that time, ICE also served Petitioner

with an Instruction Sheet to Detainee Regarding Requirement to Assist in Removal, i.e., "things you are required to complete within 30 days...in order [to] comply with your obligation to assist in obtaining a travel document." *Id*. at Ex. J.  Included in the list were the following:

> Submit passports (current and expired) to the INS.  If you have a copy of your passport, you are to submit it.
>
> Apply for a travel document/passport from your embassy or consulate, or directly from your government in your native country, or any other embassy or consulate of your native country in another country.
>
> Comply with all instructions from all embassies or consulates requiring completion of documentation for issuance of a travel document.
>
> Submit to the INS birth certificates, national identification cards, and any other document issued by a foreign government indicating your citizenship, nationality, place of birth, and place of residence prior to entering the United States.
>
> Provide names and addresses of family and friends residing in the United States and request that they contact your embassy or consulate in the United States in order to facilitate the issuance of a travel document.
>
> Provide names and addresses of family and friends residing in your country of citizenship and request family and friends residing abroad contact your government in reference to issuing a travel document.
>
> You are required to take measures to request reinstatement of your previous nationality, register as required, or take any other action that will ensure the issuance of a travel document and your removal from the United States.
>
> Provide INS with written copies of requests to embassies or consulates requesting issuance of a travel document.
>
> Provide INS with written copies of responses from embassies or consulates regarding your requests.

*Id*.  Petitioner was also advised that his failure to comply with these requirements or to provide "sufficient evidence of your inability to comply" could result in continued detention or criminal prosecution.  *Id*.

*Case No: 4:05-cv-00458-MP-AK*

On August 26, 2005, ICE requested an emergency travel document for Petitioner from the Haitian Consulate in Miami, Florida. *Id*. at Ex. K. There is no evidence that the Haitian Consulate responded to this request.

On October 4, 2005, ICE issued a Decision to Continue Detention Following File Review as follows:

> This letter is to inform you that your custody status has been reviewed by the Bureau of Immigration Customs Enforcement (ICE) and that you will not be released from custody at this time. This decision was based on a review of your record and consideration of the information you submitted to ICE's reviewing officials. After a careful review of your file and record it has been determined that [you] have not demonstrated by "clear and convincing evidence" that you will not pose a danger to society, nor will you constitute a flight risk if released from detention.
>
> This Bureau has a number of concerns regarding your ability to successfully comply and adhere to the laws of this nation. The record reveals you have a conviction for Possession of Cocaine. This conviction was committed as an adult and you should have been aware of the ramifications and consequences of your deviant behavior. This Bureau has reservations regarding your ability to successfully function in the type of environment to which you would be released.

*Id*. at L. The decision concluded as follows:

> The Bureau anticipates removing you to Haiti in the near future. Since your removal appears imminent, and the Bureau has no assurance that you would report for removal nor do you appear to have no relief available to you, you are considered to be a serious flight risk if released.
>
> If you have not been released or removed from the United States by January 6, 2006, jurisdiction of the custody decision in your case will be transferred to the Headquarters Post Order Unit [which] will make a final determination regarding your custody.

*Id*.

Petitioner filed the instant petition on October 10, 2005, and by order dated November 14, 2005, Respondents were directed to file a response by January 17, 2006. Nine days before

the response was due, January 8, 2006, ICE faxed the Haitian Consulate a request for an "update of the status of the following travel document requests," including Petitioner's.[1]  *Id*. at Ex. M. There is no evidence that the Consulate responded to this request.

On January 17, 2006, Respondents moved for an extension of time to file their response because they "had not received the necessary information from...ICE to file a proper response." Doc. 15.  The Court granted the motion, setting February 10, 2006, as the deadline for response. Shortly before the expiration of the second deadline, February 1, 2006, ICE again faxed a status request to the Haitian Consulate.  *Id*. at Ex. N.  Again, there is no evidence that the Consulate responded to this request or that Petitioner's case was ever transferred to the Headquarters Unit.

Respondents filed their response on February 10, 2006, arguing (1) that because the petition was prematurely filed, it must be dismissed, and (2) that because Petitioner has not shown that his removal will not occur in the reasonably foreseeable future, his custody is lawful.

## **DISCUSSION**

Generally, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days...."  8 U.S.C. § 1231(a)(1)(A).  The removal period

> begins on the latest of the following:
> (i)     The date the order of removal becomes administratively final.
>
> \* \* \*
>
> (iii)   If the alien is detained on confined (except under an immigration process), the date the alien is released from detention or confinement.

---

[1]The fax is actually dated "January 6, 2005."  This is clearly a clerical error of no consequence, as Petitioner did not arrive into ICE custody until late March, 2005.

*Case No: 4:05-cv-00458-MP-AK*

§ 1231(a)(1)(B). The removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." § 1231(a)(1)(C). "An alien ordered removed who is inadmissible...[or] removable...or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [90-day] removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." § 1231(a)(6). In turn, paragraph (3) provides: "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Included in the supervision requirements are periodic appearance before an immigration officer, submission for medical and psychiatric examinations, and compliance with reasonable written restrictions on the alien's conduct or activities. *Id*.

Because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," section 1231(a)(6), under which instant Petitioner is being held, was scrutinized by the United States Supreme Court to determine "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." *Zadvydas v. Davis*, 533 U.S. 678, 690, 695 (2001). In *Zadvydas*, the Court "confirmed that six months is a presumptively reasonable period to detain a removable alien awaiting deportation...." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002). After the six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must

respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701; *Akinwale*, 287 F.3d at 1052 (alien must show detention in excess of six months and evidence of good reason to believe there is no significant likelihood of removal in reasonably foreseeable future). In establishing this timetable, the Court recognized that the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. However, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Unlike the petitioner in *Akinwale*, whose removal period began on the date he was taken into ICE custody, in this case, the removal period began on July 8, 2005, when Petitioner's order of removal became final, i.e., "[u]pon dismissal of [the] appeal by the Board of Immigration Appeals," 8 C.F.R. § 1241.1(a), which is the latter of the two possible dates for the commencement of the removal period. Thus, the six-month presumptively reasonable period of detention did not conclude until January 4, 2006, approximately three months after this petition was filed. Under *Akinwale*, the "six-month period...must have expired at the time [a] § 2241 petition [is] filed in order to state a claim under *Zadvydas*," and a prematurely filed petition must be dismissed "without prejudicing [the petitioner's] ability to file a new § 2241 petition in the future that may seek to state a claim upon which habeas relief can be granted." *Akinwale*, 287 F.3d at 1052. The instant petition must therefore be dismissed.

The Court would note, however, that over ten months have now elapsed since the expiration of the presumptively reasonable period for securing Petitioner's removal to Haiti. If

Petitioner has not yet been removed, and he again seeks habeas relief, the Court will thoroughly examine Respondents' reasons for failing to secure his removal or to release him to supervised release.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED:**

That Respondents' motion for summary judgment, Doc. 18, be **GRANTED**;

That Petitioner's petition for writ of habeas corpus, Doc. 1, be **DENIED**;

That this cause be **DISMISSED WITHOUT PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this **11th** day of December, 2006.

                **s/ A. KORNBLUM**
                **ALLAN KORNBLUM**
                **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**